# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KAREN PLATT**,  Case No.
  Hon.
    Plaintiff,

v.

**UNIVERSITY OF MICHIGAN**,

    Defendant.

---

Charlotte Croson (P56589)
Adam M. Taub (P78334)
Samantha Perry (P86817)
Croson, Taub, & Michaels, PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ccroson@ctmlawyers.com
ataub@ctmlawyers.com
sperry@ctmlawyers.com

---

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff Karen Platt, by and through her attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

## **JURISDICTION AND VENUE**

1. This is an action for discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, *et seq*.

2. Defendant, the University of Michigan ("UM"), is a public university headquartered in Ann Arbor, Michigan, that administers the Michigan Medicine healthcare system.

3. Plaintiff, Karen Platt, performed work for Defendant in the Division of Hematology and Oncology ("HEMONC") of the Michigan Medicine healthcare system.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

5. Venue is proper in this Court because Defendant employed Plaintiff within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

6. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her disability and retaliation.

7. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

8. Plaintiff received her notice of right to sue, and she has filed this complaint within ninety (90) days of receiving her notice of rights.

## STATEMENT OF FACTS

9. Plaintiff began working for Defendant on April 23, 2012, as an Administrative Assistant Intermediate in the HEMONC division of Michigan Medicine.

10. Plaintiff's primary duties were to support oncologists in scheduling meetings and conferences, process email and other correspondences, and manage requisitions.

11. Plaintiff successfully performed her job duties, receiving positive performance evaluations and merit awards throughout her employment.

12. During her employment, Plaintiff was diagnosed with and/or suffered from several serious health conditions, including pelvic insufficiency fracture, abdominal neuroma, and adult-onset scoliosis.

13. Plaintiff's health conditions cause her chronic pain and impair her ability to stand and walk and require her to use a walker for mobility.

14. In or about April 2019, Plaintiff requested reasonable accommodations, including, but not limited to, being excused from the non-essential job function of rolling a steel cart carrying about 70 pounds of bottled water, snacks, tableware, and

printed materials to conference rooms in the hospital far from Plaintiff's workspace. Defendant refused Plaintiff's reasonable accommodation.

15. Plaintiff continued to be able to perform the essential functions of her job with or without accommodations.

16. Plaintiff took leave as a result of her medical conditions in or about October/November 2019.

17. After Plaintiff returned from medical leave, in or about November/December 2019, Plaintiff's supervisor and a Human Resources representative called Plaintiff into a meeting where they told her she should enter the RAC program, i.e., a path to disability retirement.

18. Plaintiff refused to enter into the RAC program and shortly thereafter filed a complaint of disability discrimination with Defendant's Office for Institutional Equity ("OIE").

19. In or about January of 2020, only after Plaintiff had filed her OIE complaint, Defendant granted Plaintiff's accommodation request by allowing another person to assist with moving the cart. Plaintiff continued to perform her job with a high degree of excellence.

20. Plaintiff also had a reasonable accommodation of medical leave in the form of intermittent FMLA/medical leave, which was approved for four days per

month off work to manage her disability, such as by attending doctor's appointments. She always scheduled all absences with management approval.

21. In March 2020, Plaintiff and all other Administrative Assistants began working remotely due to the COVID-19 pandemic.

22. In or about May 2020, Plaintiff applied for and accepted a voluntary furlough from Defendant because of COVID. Plaintiff returned to work on or about August 1, 2020, working remotely full time.

23. When Plaintiff returned to work, she renewed her request for intermittent FMLA leave. Defendant initially denied Plaintiff's request but, after Plaintiff complained, her accommodation in the form of medical leave was reinstated.

24. Remote work created challenges for Defendant's employees, including but not limited to creating lag time in responsiveness from the doctors Plaintiff assisted.

25. Plaintiff's supervisor took this opportunity to give Plaintiff unwarranted discipline and performance criticism, with the intent of pushing Plaintiff out of her employment with Defendant.

26. Prior to requesting reasonable accommodations and filing her complaint of disability, in eight years of employment, Plaintiff had never been disciplined, placed on performance improvement, or even given a bad performance

4

review. In fact, in or about August 2020, Plaintiff was rated satisfactory on her performance review.

27. On December 15, 2020, Defendant put Plaintiff on a Performance Improvement Plan ("PIP") relying on vague accusations of untimeliness in her job duties and imposing vague and subjective requirements for improvement.

28. Although Plaintiff did not feel her performance had been deficient, in the areas outlined in the PIP, she worked diligently to improve her performance. Doctors to whom Plaintiff reported noted that COVID conditions made it difficult to assess the necessary level of support from administrative employees because of the disruptions to administrative and academic functions and that COVID had turned even simple matters upside down.

29. In the months following the implementation of the PIP, Plaintiff did improve her performance and completed her PIP with higher performance and increased satisfaction.

30. In fact, in January 2021, Plaintiff received a "Making a Difference Award" for hard work and dedication to support Defendant's staff during the challenges created by the pandemic and the "tough times" Plaintiff's entire department was experiencing.

31. On March 17, 2021, Defendant terminated Plaintiff, ostensibly due to poor performance and a new allegation of excessive absences. Defendant's proffered reasons were pretext for discrimination and retaliation.

32. Defendant did not subject any similarly situated, non-disabled employees to a PIP or termination of employment.

33. On information and belief, Defendant replaced Plaintiff with a non-disabled employee.

34. Defendant never raised any issues with Plaintiff's performance until after she requested accommodations for her disabilities and filed a complaint with OIE when Defendant initially denied that request.

35. On or about July 16, 2021, Plaintiff filed a timely charge of disability discrimination and retaliation with the EEOC.

36. On or about June 22, 2023, Plaintiff received her right to sue letter from the EEOC, and this complaint has been timely filed within 90 days of receipt.

## COUNT I: DISABILITY DISCRIMINATION

37. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

38. Defendant is an employer as defined by the Americans with Disabilities Act.

39. Defendant receives Federal financial assistance, subjecting it to Section 504 of the Rehabilitation Act.

40. Plaintiff has a disability as defined by the Americans with Disabilities Act and Rehabilitation Act, to-wit:

   a. a physical impairment, which substantially limits one or more of her major life activities, including, but not limited to, her ability to walk, stand, work, and engage in the daily activities of life; and/or

   b. a record of such physical impairment.

41. Plaintiff is a qualified individual with a disability as defined by the ADA and Rehabilitation Act, to-wit: Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of her employment duties with Defendant.

42. Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

43. Defendant was aware of Plaintiff's disability.

44. Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of the ADA and Rehabilitation Act by, *inter alia*, putting her on a PIP and terminating her employment.

45. Plaintiff's disabilities were the motivating and/or but for cause of the adverse employment actions Defendant took against her.

46. Defendant's actions in violation of the law were willful.

47. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

48. As a direct and proximate result of Defendant's violation of the ADA and Rehabilitation Act, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

49. As a further direct and proximate result of Defendant's violation of the ADA and Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II: RETALIATION

50. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

51. As stated above, at all relevant times, Defendant was a covered entity under the ADA and the Rehabilitation Act, and Plaintiff was an employee covered by and within the meaning of the ADA and Rehabilitation Act.

52. Plaintiff engaged in protected activity, in good faith, including, but not limited to, by requesting reasonable accommodations for her disability and complaining to the OIE regarding Defendant's failure to accommodate her.

53. These exercises of protected rights were known to Defendant.

54. Thereafter, in retaliation for her protected activity, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to putting her on a PIP and terminating her employment.

55. Defendant's reasons for taking these actions were retaliatory and not legally justified.

56. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

57. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

58. Defendant's actions in violation of the ADA were willful.

59. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

60. As a direct and proximate result of Defendant's violation of the ADA and Rehabilitation Act, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

61. As a further direct and proximate result of Defendant's violation of the ADA and Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, **KAREN PLATT**, requests that this Court enter the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of the ADA and Rehabilitation Act;

b. Compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Punitive damages in whatever amount she is found to be entitled;

d. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

e. An order of this Court reinstating Plaintiff to the position she would have if there had been no wrongdoing by Defendant;

f. An injunction of this Court prohibiting any further acts of discrimination or retaliation by Defendant;

g. An award of interest, costs, and reasonable attorney fees; and

h. Whatever other equitable relief this Court finds appropriate.

        Respectfully Submitted,
        CROSON, TAUB, & MICHAELS, PLLC


        /s/ Adam M. Taub_____
        Adam M. Taub
        Attorney for Plaintiff
        455 E. Eisenhower Pkwy, Suite 75
        Ann Arbor, MI 48108
        (734) 519-0872
        ataub@ctmlawyers.com

Dated: September 20, 2023

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KAREN PLATT**,

      Plaintiff,

v.

**UNIVERSITY OF MICHIGAN**,

      Defendant.

---

Charlotte Croson (P56589)
Adam M. Taub (P78334)
Samantha Perry (P86817)
Croson, Taub, & Michaels, PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pwky, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
ccroson@ctmlawyers.com
ataub@ctmlawyers.com
sperry@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Karen Platt, by and through her attorneys, Croson, Taub, & Michaels, PLLC, demands a trial by jury for all issues so triable.

|  |  |
|---|---|
|  | Respectfully Submitted,<br>CROSON, TAUB, & MICHAELS, PLLC |
|  |  |
|  | /s/ Adam M. Taub<br>Adam M. Taub (P78334)<br>Attorney for Plaintiff<br>455 E. Eisenhower Pkwy, Suite 75<br>Ann Arbor, MI 48108<br>(734) 519-0872 |
| Dated: September 20, 2023 | ataub@ctmlawyers.com |